## UNITED STATES v. WATSON.
### Cr. No. 2573.

United States District Court
E. D. Virginia, Alexandria Division.
Sept. 10, 1948.

George R. Humrickhouse, U.S.Atty., of Richmond, Va., for plaintiff.

Andrew W. Clarke, of Alexandria, Va., for defendant.

BRYAN, District Judge.

The United States informs against the accused in four counts. The first specifies the reckless driving of an automobile on Fuller Road, as prohibited by the statutes of Virginia and made a federal offense by the Assimilative Crimes Act, 18 U.S.C.A. § 13. Each of the other counts alleges a violation of section 1382, title 18 U.S.C.A., in that the defendant reentered the United States Marine Corps Reservation at Quantico, Virginia, that is, went upon Fuller Road, after having been ordered not to do so by the general in command.

The first count tenders the question of whether the road was within the criminal jurisdiction of the United States, and the other counts depend for decision on whether the road is a reservation in the requisite ownership or possession of the United States.

The practical importance of the jurisdictional question here involved justifies the time that has been allowed for research by the United States and the defendant.

On proper waiver the case was tried to the court without a jury. At the conclusion of the testimony it was agreed, that the parties would brief the jurisdictional point, and also submit to the court any title documents pertaining to the road and deemed relevant by the prosecution or the defense.

The Government has proved beyond a reasonable doubt the commission by the defendant of the acts charged to him in the information, and the Court should find him guilty on each count if the United States has the requisite jurisdiction and ownership or possession of the highway, all of such acts having been committed on it.

Fuller Road extends from the Richmond-Washington Highway, a public highway of the State of Virginia and designated as U.S. No. 1, eastwardly for a distance of several miles to the town or village of Quantico, Virginia, located on the west bank of the Potomac River. Originally Fuller Road was a public or county road for access to Quantico and the adjacent territory. The United States established the Marine Corps Barracks at Quantico in June 1917, holding the site under a lease describing a tract of land that embraced the road and the land on each side of it. After the Government occupied the leased area, the road was used by the Marine Corps for vehicular and pedestrian traffic in the Reservation and between No. 1 Highway and the Reservation's main gate, which was located near the eastern terminus of the road and almost abutting Quantico, and the public continued to use it in going to and from Quantico.

In 1918 through appropriate steps, including a proclamation by the President, No. 1493, Nov. 4, 1918, 40 Stat. part 2, 1874, 1880–1884, and supplementary hearings as authorized by an enabling Act of Congress, July 1, 1918, 40 Stat. 724, 738, the United States acquired the fee simple title to the Reservation. The perimeter description of the land so acquired coincided with the boundaries set forth in the lease, thus embracing Fuller Road.

The east boundary line of the Reservation as set forth in this description runs northwardly along the west shore of the Potomac River, from a point south of Quantico, to the town and thence around its westerly side, and then to the River again, crossing Fuller Road, or its extension, at the west end of the town. Thereby Quantico was completely cut off from access to Highway No. 1, and indeed from the rest of Virginia, by land, save for the county or public road which had become Fuller Road. The town was sqeezed between the Potomac River and the Reservation. If the United States acquired the entire title, that is, every outstanding title, right and easement in the public road, then the town or village was made virtually an exclave of Virginia.

By statute the State had consented to the acquisition and ceded exclusive jurisdiction to the United States over whatever property was taken, reserving only her right to serve civil and criminal process thereon. Acts of the General Assembly of Virginia, 1918, c. 382, p. 568.

█ .I. From an examination of the records cited in the Government's brief, the Court is of the opinion that the United States acquired the entire fee simple title, except only the outstanding rights herein-

after noted, in and to the land comprising Fuller Road, and thereby the United States became vested with exclusive criminal jurisdiction of it—the jurisdiction theretofore exercised over the road by the State of Virginia. Therefore, the Court holds that the United States has exclusive criminal jurisdiction over so much of Fuller Road as lies within the exterior boundary lines of the tract acquired, which practically is its full length, extending from No. 1 Highway to the west end of Potomac Avenue in Quantico.

A judgment finding the defendant guilty under the first count and fixing his punishment therefor will be passed.

II. On the other counts of the information, proof of the illegality of the conceded reentry of the accused is not so clear. It must be remembered that the "reservation", which the defendant is here charged with reentering, is Fuller Road—the only thoroughfare connecting Quantico and the other territory of Virginia. He had been forbidden by the commandant to go upon that road. His alleged crime is the use of the road thereafter—not entry into the Reservation proper. Obviously too the ownership or possession of the road is an element of the crime charged in the last three counts of the information. It is not simply the jurisdictional phase of those counts. Without proof of the requisite ownership or possession of the United States, the crime has not been made out.

The Court is of the opinion that the United States must show an absolute ownership, or an exclusive right to the possession, of the road, in order to enforce the commandant's interdiction of the defendant. To punish an infraction of the order, as an offense under title 18, section 1382, U.S.C.A., proof of criminal jurisdiction of the road alone was not enough. Sole ownership or possession, as against the accused, had to be in the United States or there was no trespass. But the evidence does not, and very probably cannot, establish such conclusive ownership or possession in the United States.

The relative location of the town of Quantico, the Reservation and the remainder of the State of Virginia itself raises considerable doubt that the acquisition was designed to be so complete, in respect to Fuller Road, as to destroy every right of passage thereover except by the United States or by its leave. Rather it appears that the United States acquired and holds the strip of land comprising the road just as did the former owners or condemnees of it, that is, subject to the public thoroughfare, or at least subject to the right of ingress and egress in favor of the property located in Quantico, and substituting the sovereignty of the United States over it for that of the State of Virginia. As lessee of the land the road was improved by the United States and all persons used it as a county road. In taking the land the United States apparently contemplated no more exclusive user of the road.

Inspection of the condemnation records confirms this view. Nowhere therein is apparent any effort by the United States to acquire the public easement or the special property interest of the Quantico landowners in it. None of the latter's rights were mentioned. Neither the State nor the county was impleaded as the representative or holder of the public interest.

To be sure, the United States could have taken all of such rights, but the proof does not support so extensive a condemnation. Such an acquisition would have so depreciated the property in Quantico as to be almost the equivalent of a condemnation of the absolute fee in all the property in the exclave. So exclusive a taking was apparently not intended. Certainly it was not attempted—probably because it was not needed.

Evidence that the road is within the area taken does not alone justify the sweeping inference that the capture destroyed the strip as a road, and dissolved all rights of user theretofore held by the public or by certain persons having a special interest therein. Such evidence may prove jurisdiction but it does not prove absolute ownership or possession. It establishes the authority of the United States to police the road, and to punish the defendant for improper conduct on the road, but it does not warrant proscription of a correct use of the road.

That the defendant was forbidden to enter upon the road, and that thereafter he did so enter, have been proved beyond a reasonable doubt; but the absolute ownership or possession of the United States, so necessary to warrant the order, has not, and doubtless could not, be proved, and consequently there has been no offense made against the statute. It follows that he must be found not guilty under each of the last three counts of the information.