IKUTA, Circuit Judge,
dissenting:
Today, the majority adopts an idiosyncratic approach to precedent to avoid following one of our en banc decisions. Although an en banc panel stated that “assault with a deadly weapon” is not a crime involving moral turpitude, see Navarro-Lopez v. Gonzales, 503 F.3d 1063, 1073 (9th Cir.2007), overruled on other grounds by United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir.2011) (en banc), and although this statement has been followed by subsequent panels, see, e.g., Robles-Urrea v. Holder, 678 F.3d 702, 708 (9th Cir.2012), Castrijons-Garcia v. Holder, 704 F.3d 1205, 1212 (9th Cir.2013), the majority decides it is not bound by this precedent because Navarro-Lopez was mistaken in the way it reached this conclusion. Because we are not free to cast off precedent, however mistaken, unless we correct it through en banc rehearing, see United States v. Parker, 651 F.3d 1180, 1184 (9th Cir.2011); Hart v. Massanari, *433 266 F.3d 1155, 1171 (9th Cir.2001), I respectfully dissent.
I
Ruben Cerón was convicted of assault with a deadly weapon in violation of California Penal Code section 245(a)(1). The question before us is whether this crime categorically involves moral turpitude.
A
We established our analytical approach to this question in Navarro-Lopez. In that case, we considered whether a conviction for accessory after the fact was a crime involving moral turpitude. See Navarro-Lopez, 503 F.3d at 1067. In analyzing this issue, we first derived the generic definition of the term, stating that “a crime involving moral turpitude is a crime involving conduct that (1) is base, vile, or depraved, and (2) violates accepted moral standards.” Id. at 1068. Despite the breadth of this definition, we warned that it was not limitless, because “at some level all illegal acts violate societal norms and values — that is why the acts are illegal.” Id. at 1072 n. 9. Rather, we explained, “ ‘crimes involving moral turpitude’ is a limited category of crimes and does not extend to cover all conduct that violates the law.” Id. In order to determine whether “accessory after the fact” fell into this limited category, we compared it to other crimes not deemed to be morally turpitudinous. See id. at 1072-73. Because “neither burglary nor assault with a deadly weapon constitute crimes of moral turpitude,” and because one could be an accessory to such non-turpitudinous eon-duct, we concluded that acting as an accessory after the fact could not categorically constitute a “crime involving moral turpitude.” Id. at 1073.
The concurrence (which is precedential, because it was joined by seven other judges) agreed that accessory after the fact was not a crime of moral turpitude, and echoed the majority’s concern about defining crimes of moral turpitude too expansively.[1] See id. at 1075. The concurrence then echoed the majority’s reasoning that in order to identify what sort of conduct “offend[s] the most fundamental moral values of society” a comparative approach must be used: namely, we must “compare a crime’s depravity with that of crimes we have previously determined to be base, vile and depraved — crimes such as murder, rape, and incest.” Id. at 1074-75. It likewise noted that assault with a deadly weapon was not a crime involving moral turpitude. Id. at 1074.
Throughout the en banc panel’s effort to delimit the boundaries of crimes involving moral turpitude, the majority and the concurrence stated three times that the offense of assault with a deadly weapon is not a crime involving moral turpitude. See, e.g., id. at 1072 (“No court has ever found possession of a weapon to be a crime involving moral turpitude. Cf. Carr, 86 F.3d at 950-51 (holding that assault with a deadly weapon was not a crime involving moral turpitude)”); id. at 1073 (“We have held that neither burglary nor assault with a deadly weapon constitute crimes of moral turpitude.”); id. at 1075 (Reinhardt, J., concurring) (“There are other offenses that are so base, vile, and depraved that *434 they qualify as crimes of moral turpitude. ... Not all serious crimes meet this standard, however. Indeed, we have determined, for example, that burglary ... and assault with a deadly weapon ... do not involve moral turpitude.”) (internal citation omitted).
Our categorization of assault with a deadly weapon as a non-turpitudinous offense was a significant part of the en banc panel’s analysis and was necessary to the ultimate holding of Navarro-Lopez. Accordingly, we are bound by this statement absent “intervening higher authority” that “effectively overrulefs]” it, see Miller v. Gammie, 335 F.3d 889, 892-93 (9th Cir.2003) (en banc), and indeed, subsequent panels have continued to cite to Navarro-Lopez as an authoritative statement that assault with a deadly weapon is not a crime involving moral turpitude. See, e.g., Robles-Urrea, 678 F.3d at 708; Castrijon-Garcia, 704 F.3d at 1212. Moreover, when we sit en banc and act in our supervisory role, our statements are binding whether or not they are technically necessary to our holdings. See Barapind v. Enomoto, 400 F.3d 744, 751 n. 8 (9th Cir.2005) (en banc) (stating that “[o]ur [en banc] opinion provides a supervisory function” by instructing three judge panels and district courts about “how to determine what law is binding on them.”). This logic applies equally to our categorization of different offenses in Navarro-Lopez.
B
Contrary to our longstanding rules about binding precedent, however, the majority concludes that we are not bound by Navarro-Lopez’s categorization of assault with a deadly weapon because Navarro-Lopez cites to Carr v. INS, 86 F.3d 949 (9th Cir.1996), which held that assault with a firearm was not a crime involving moral turpitude, but did not mention whether assault with any other deadly weapon was likewise non-turpitudinous. See maj. op. at 427-29.
I disagree with both of the majority’s reasons for sweeping aside our precedent. See maj. op. at 429 n. 2. First, the majority errs in holding that statements in a prior opinion are not binding if the majority decides that those statements relate to an issue that was not “presented for review.” Id. Because a subsequent panel can define the issues “presented for review” as broadly or narrowly as it chooses, this “test” threatens to swallow our rule regarding binding precedent. See, e.g., Oshodi v. Holder, 671 F.3d 1002, 1008 n. 4 (9th Cir.2012) (rejecting an interpretation of the REAL ID Act in Ren v. Holder, 648 F.3d 1079 (9th Cir.2011), because “that issue was not ‘presented for review’ to the Ren panel,” and therefore its interpretation “is dicta and need not be considered here.”), reh’g en banc granted, 678 F.3d 776 (9th Cir.2012) (internal citations omitted). Here, the Navarro-Lopez en banc panel determined that the resolution of the question whether “accessory after the fact” constituted a “crime involving moral turpitude” required it to review and categorize the crimes that fell inside and outside this category and assault with a deadly weapon was among the crimes it reviewed. See Navarro-Lopez, 503 F.3d at 1072-73. The en banc court’s analysis of this legal issue cannot now be brushed aside on the ground that the parties did not specifically ask the en banc court to conduct such a review.[2]
*435 Second, the majority errs in holding that we can ignore or overrule a statement in one of our en banc opinions if it relies on precedent that is not directly on point. If this were true, untold numbers of our rulings would be deemed non-precedential. Here, Navarro-Lopez applied the holding in Carr (that assault with a firearm was not a crime involving moral turpitude) to assault with other deadly weapons. See id. at 1072-73. Contrary to the majority’s argument, this is a reasonable extension of our precedent, not a “plain misstatement” akin to an inadvertent transposition of two numbers. See maj. op. at 429 n. 2.
Moreover, even if Navarro-Lopez had made a mistake in interpreting Carr, a three-judge panel could not overrule such an error; “[o]nly the en banc court” can correct such mistakes. See Parker, 651 F.3d at 1184.[3] Indeed, we expressly rejected the majority’s approach in United States v. Contreras (Contreras II), 593 F.3d 1135, 1136 (9th Cir.2010) (en banc). In that case, it was clear that one of our opinions, United States v. Hill, 915 F.2d 502 (9th Cir.1990), had been overruled by the 1993 amendments to the Sentencing Guidelines. See United States v. Contreras (Contreras I), 581 F.3d 1163, 1166 (9th Cir.2009). But several intervening Ninth Circuit cases continued to cite to Hill erroneously after the 1993 amendments. See id. at 1167. Because this was error, the Contreras I panel said that it was not bound by those intervening cases, and ruled that it was instead bound to follow the Guidelines. See id. at 1168-69. We took the case en banc to clarify that this method of overruling cases is wrong. See Contreras II, 593 F.3d at 1136. On en banc rehearing, we affirmed the substance of the three judge panel’s opinion, but vacated the panel’s analysis concerning its ability to overrule Hill and later cases. See id. In stating that we are not bound to follow three judge panels citing to Carr because their decisions have misinterpreted it, see maj. op. at 428-29, the majority commits a similar error.[4]
*436 In sum, the majority lacks the authority to sweep aside multiple Ninth Circuit rulings, including an en banc opinion, and insist on the ruling it prefers. See Barapind, 400 F.3d at 750-51 & n. 8. Because our en banc panel established that assault with a deadly weapon is not a crime involving moral turpitude, I dissent.

. The concurrence disagreed with the portion of the majority’s opinion which held that crimes involving fraud were not a "per se category of crimes involving moral turpitude." Id. at 1074 (Reinhardt, J., concurring). The precedential concurrence held instead that under longstanding case law, crimes involving fraud should be analyzed as a separate category of crimes involving moral turpitude rather than acts that are "base, vile, or depraved." Id.

. The majority relies on Chen v. Mukasey, 524 F.3d 1028 (9th Cir.2008) and United States v. Macias-Valencia, 510 F.3d 1012 (9th Cir.2007) for the principle that a subsequent panel is not bound by statements in prior decisions relating to an issue that had not been “presented for review,” but neither case supports that principle. In both cases, the prior *435 decision in question had acknowledged that its passing remarks were not precedential. See Chen, 524 F.3d at 1033 (“We acknowledged, however, that [our observation in He v. Gonzales, 501 F.3d 1128 (9th Cir.2007) about the potential relief available to the petitioners] was not before us.”); see also Macias-Valencia, 510 F.3d at 1015 (holding that “our use of the subjunctive” in mentioning an argument in passing "suggests that we knew that we were not addressing, and that we could not address” that argument). Here, the Navarro-Lopez en banc panel repeatedly asserted that assault with a deadly weapon is not a crime involving moral turpitude, and nowhere suggested that this categorization was a non-precedential offhand remark.

. Thus, it does not matter that an earlier three-judge panel held that assault with a deadly weapon is a crime involving moral turpitude. See maj. op. at 427-28 (citing Gonzales v. Barber, 207 F.2d 398, 400 (9th Cir.1953)). An en banc decision overrules all prior precedent. See Gammie, 335 F.3d at 892-93. Even if there were a conflict between Barber and Navarro-Lopez or our subsequent case law, a three-judge panel cannot resolve the conflict by ignoring the later precedent. Rather, “the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision.” Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir.1987) (enbanc).

. Curiously, the majority eschews this approach in the second part of its opinion, where it acknowledges that we are bound by Garcia-Lopez v. Ashcroft, 334 F.3d 840 (9th Cir.2003) and Ferreira v. Ashcroft, 382 F.3d 1045 (9th Cir.2004) despite their obviously erroneous interpretation of California law. See maj. op. at 432 ("Nevertheless, Garcia-Lopez and Ferreira held, in circumstances indistinguishable from these, that section 19 applies. Accordingly, we must follow those cases and analyze whether [Ceron’s] crime was a misdemeanor or a felony. Barapind, 400 F.3d at 750-51; Gammie, 335 F.3d at 899-900 ”).